UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| F5 CAPITAL | § | Case No. 14-cv-1469 |
| | § | |
| Plaintiff, | § | COMPLAINT |
| | § | |
| vs. | § | |
| | § | JURY TRIAL DEMANDED |
| RBS SECURITIES INC., and THE | § | |
| DEPOSITORY TRUST COMPANY | § | |
| | § | October 3, 2014 |
| Defendants. | § | |

Plaintiff F5 Capital, by and through its attorneys, alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for conversion, civil theft, negligence, replevin and for an accounting in connection with Defendant RBS SECURITIES INC.'s ("RBS") continued possession as well as wrongful and wanton failure to turnover to plaintiff certain shares in non-party Star Bulk Carriers Corp. ("Star Bulk"), a Marshall Islands company that is publicly traded on the NASDAQ.

## PARTIES

2.      Plaintiff, F5 Capital ("F5"), is a company incorporated under the laws of the Cayman Islands with its principal place of business located in the Cayman Islands. F5 is an investment company principally concerned with investing and dealing in securities in field of international shipping.  F5 is affiliated, through common ownership by Hsin Chi Su ("Mr. Su"), with TMT Co. Ltd. ("TMT"), which maintains an international fleet of shipping carriers.

3.      Defendant RBS Securities Inc., formerly known as Greenwich Capital Markets, Inc. ("RBSSI"), is a limited liability company formed and existing under the laws of the State of Delaware.  RBSSI is based in Stamford, Connecticut.   RBSSI is a wholly-owned subsidiary of

RBS Holdings USA Inc. ("RBS Holdings").  RBS Holdings is an indirect wholly-owned subsidiary of the Royal Bank of Scotland Group plc ("RBS").

4.      Defendant THE DEPOSITORY TRUST COMPANY ("DTC") is a wholly owned subsidiary of the Depository Trust Clearing Company and is based in New York.  DTC is sued herein as a necessary party because, upon information and belief, it holds or controls the Star Bulk shares that are the subject of this action for the benefit of RBSSI.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) and § 1367(a) because Plaintiff is a citizen or subject of a foreign state who does not have permanent residence in the United States and Defendants are citizens of the States of Connecticut and New York and the matter in controversy exceeds the sum or value of $75,000 exclusive of interests and costs.

6.      Venue is proper in this Court because Defendant RBSSI resides in or regularly conducts business in Connecticut, Defendant DTC regularly conducts business in Connecticut, and, upon information and belief, the property in question was or is in Connecticut.

## SUBSTANTIVE ALLEGATIONS

7.      On January 12, 2007, F5's director and owner, Mr. Su, acquired approximately 12.5 million shares of Star Bulk pursuant to a master agreement.  Mr. Su was named a director and co-chairman of the board of Star Bulk along with Greek shipping tycoon Petros Pappas. Ultimately, Mr. Su was forced by Pappas and the company Pappas controlled, Oceanbulk, to transfer all of these Star Bulk shares, except for 3,000,000, to Oceanbulk-nominated accounts to clear positions Mr. Su had in certain freight forward agreements with Oceanbulk.

8.      On or around July 9, 2008, F5 acquired the remaining 3,000,000 shares of Star Bulk.

9.      In May 2007, TMT opened a Forward Freight Agreement Clearing Account with the Royal Bank of Scotland plc (at various times trading under the name of "RBS Greenwich Futures").  From 2007 to 2009, RBS made a number of margin calls, many of which, upon information and belief, were based upon false or manipulated data, resulting in TMT paying more than one hundred million dollars and pledging to RBS assets worth tens or hundreds of millions of dollars.

10.     In one of these instances, RBS made a margin call against TMT in November 2008 pursuant to the Futures Agreement governing the TMT-RBS account.  Following lengthy discussions between TMT and RBS concerning the assets and securities to be pledged for this margin call, in late 2008 or early 2009, TMT sent RBS the share certificate issued to F5 Capital for the 3,000,000 Star Bulk shares (SBC No. 0127) that had been issued to F5 Capital to be held by RBS as collateral.  However, a formal pledge agreement for these shares never was executed.

11.     On February 18, 2009, RBS sent this share certificate to ABN AMRO, an entity which RBS acquired, and which later became Greenwich Capital, now known as RBSSI.

12.     Representatives of RBSSI have informed plaintiff through its counsel that on or about February 26, 2009, it arranged for the Star Bulk shares to be converted into electronic form such that DTC became the registered holder of the Star Bulk shares and they were placed in "DTC account number 425" for RBSSI.

13.     In 2010, F5 Capital, TMT, and several other Mr. Su–associated entities sued RBS in England alleging, among other things, inaccuracies in the FFA clearing account's account statements.  The claims against RBS included breach of contract, violations of financial statutes, breach of express and implied duties, and negligent misrepresentation.  On May 29, 2012, RBS agreed, in return for consideration, to "take such steps as may be required to release and

discharge . . . .[t]he 3 million ordinary shares in Star Bulk Carriers Corporation deposited with [RBS] by [F5 Capital]."  RBS received its consideration and has asserted no right to hold the shares since then.  RBSSI was not a party to this agreement.

14.     Between November 2008 and September 2012, Star Bulk declared cash and/or stock dividends that should have been paid on the 3,000,000 original Star Bulk shares, which would have resulted in RBS or RBSSI holding at least $1,635,000 in Star Bulk dividends for and on behalf of F5 Capital.

15.     On October 15, 2012, Star Bulk announced a 15:1 reverse split of its common shares.  As a result, the 3,000,000 original Star Bulk shares held by RBSSI were converted into 200,000 shares.

16.     In June 2013, Star Bulk announced an equity rights offering of up to 14,018,692 common shares under a shelf registration.  F5 Capital instructed RBS to use funds from the dividends held on behalf of F5 Capital to purchase 305,599 new shares of Star Bulk under the rights offering.  In November 2013, RBS transferred 92,000 of these shares to a third party according to F5's instructions.  The balance of those shares, or 213,599 shares, should have been delivered to F5 but have not been delivered to it.

17.     As of this date, RBSSI holds a total of at least 413,599 Star Bulk shares in its DTC account 425.

18.     At various times over the past year, RBS or RBSSI has acknowledged that the shares held by RBSSI are at least beneficially owned by F5 Capital; RBSSI has acknowledged F5's economic interest in the shares; and RBSSI asserts no present claim over these shares.

19.     Nevertheless, despite repeated requests from F5 Capital that RBSSI transfer all rights for control and disposition of the Star Bulk shares to F5 Capital, RBSSI has wrongfully failed to do so.

20.     In addition, over the past 18 months, F5 Capital repeatedly has asked RBS for assurances concerning the precise accounting used by RBSSI to value the Star Bulk shares, calculate interest due F5, and determine the dividend payments due to F5.  In response, RBSSI has taken the position that it owes no interest to F5 for the multiple years that it has enjoyed possession of F5's Star Bulk shares.  It has further asserted, but has provided no evidence, that it has not received any further dividend payments since September 2012.

21.     Rather than returning the Star Bulk shares to F5's possession, RBS and RBSSI have held the Star Bulk shares hostage in an attempt to extract unwarranted legal concessions from F5.  In one example, after F5 demanded an accounting and payment of its interest due from the Star Bulk shares resting in RBSSI's possession, RBSSI proffered $10,000 of hush money only on the condition that F5 waive any and all claims F5 may have "in connection with the Star Bulk shares or any dividends on them" or on any claim related to the 2010 RBS litigation.

22.     In other examples, requests by F5 that RBS release the Star Bulk shares largely have been met with obstruction.  Rather than honor F5's repeated demands for immediate repossession of the shares to which it has had an unencumbered legal right since at least May 2012, RBS repeatedly refused any transfer by demanding in return an additional and much broader release from F5 than was provided for in the 2010 RBS litigation.

23.     That Settlement Agreement no longer serves any purpose and no claim is asserted thereunder.  In addition, as alleged above, more than half of the Star Bulk shares held by RBS or RBSSI never were subject to any pledge.

24.     It is apparent that RBS and RBSSI are grasping so desperately for additional legal protections due to fear of legal exposure for any unresolved liabilities related to RBS's handling of F5's and TMT's accounts and assets, including RBS's massive miscalculations of account balances, unusual or unfounded margin calls, numerous substantial accounting errors, and alterations of values relating to TMT's trading account between 2007 and 2009.

25.     In addition, RBS and RBSSI representatives have represented that the F5 stock certificate No. 127 for the shares in question was converted into electronic form.  Neither RBS nor RBSSI ever explained to F5 the reason for this conversion of F5's property to another form.

26.     RBS and RBSSI did not have the authority to convert F5's stock certificate for the shares in question to an electronic form, but did it nonetheless.

27.     As illustrated in the aforementioned conduct, RBS through its subsidiary Defendant RBSSI still exercises possessory ownership rights over F5's Star Bulk shares, depriving F5 from its right of possession and custody over its assets.

28.     The unjustified failure of Defendants to restore possession of the shares to F5 has interfered and continues to interfere with F5's ongoing legal rights, including its shareholder voting rights and its rights to inspect the books and records of Star Bulk.

## COUNT I

### Against Defendant RBSSI for Conversion

29.     Plaintiff incorporates by reference and realleges paragraphs 1 through 26 above.

30.     RBSSI is in possession of and/or exercises control over property that belongs to plaintiff and has wrongfully and without lawful authority deprived plaintiff of possession of the property.

31.     RBSSI's conduct has caused serious and substantial financial harm to plaintiff.

## COUNT II

### For Civil Theft Against Defendant RBSSI

32.     Plaintiff incorporates by reference and realleges paragraphs 1 through 31 above.

33.     F5 has made clear its request for full release of its Star Bulk shares on multiple occasions within the past 18 months.  RBSSI has been on notice of F5's express, written requests for the return of its assets.

34.     Nonetheless, RBSSI knowingly and intentionally refuses to unilaterally return full possession and custody of the Star Bulk shares to F5, the shares' rightful owner.  Instead, RBSSI intentionally and wrongfully continues to exercise dominion over F5's assets in an attempt to extract concessions from F5 and related entities.

35.     RBSSI's intentional appropriation of F5's Star Bulk shares constitutes statutory theft under Conn. Gen. Stat. § 52–564, entitling F5 to a recovery of treble damages.

## COUNT III

### Negligence against Defendant RBSSI

36.     Plaintiff incorporates by reference and realleges paragraphs 1 through 35 above.

37.     RBSSI, in holding or exercising control over the Star Bulk shares on behalf of Plaintiff, had a duty to exercise reasonable care.

38.     RBSSI has failed to exercise reasonable care over the Star Bulk shares.

39.     Plaintiff has suffered actual injury due to RBSSI's negligence.

## COUNT IV

### Replevin against Defendants RBSSI and DTC

40.     Plaintiff incorporates by reference and realleges paragraphs 1 through 39 above.

41.     Defendants RBSSI and DTC are in possession or control of property belonging to plaintiff and they have wrongfully detained such property.

42.     Plaintiff has immediate right to possession of the property held by Defendants RBSSI and DTC.

43.     Plaintiff has and continues to suffer dmages and injury due to Defendnats' continued wrongful possession over the property that belongs to Plaintiff.

## COUNT V

### Accounting against Defendants RBSSI and DTC

44.     Plaintiff incorporates by reference and realleges paragraphs 1 through 43 above.

45.     Defendants RBSSI and DTC, in holding property belonging to Plaintiff, owe a special duty of care to plaintiff such that a special relationship exists between them.

46.     In addition to turnover of the shares demanded herein, Defendants must account to Plaintiff for any interest, dividends, commissions, remunerations, or benefits that RBSSI directly or indirectly has realized or may realize as a result of or in connection with their possession or control of the shares.

47.     WHEREFORE, Plaintiff F5 Capital demands judgment against Defendants as follows:

1.     For money damages;

2.     For consequential damages;

3.     For an injunction prohibiting RBSSI from any sale or transfer of F5's Star Bulk shares under RBSSI's custody;

4.      For an accounting and repayment of all interest, dividends, commissions, remunerations, or benefits that RBSSI directly or indirectly has realized or may realize as a result of or in connection with its possession of F5's assets;

5.      For pre and post-judgment interest;

6.      For attorney's fees;

7.      For exemplary and punitive damages

8.      For costs; and

9.      For such other appropriate legal or equitable relief as the may be just.


THE PLAINTIFF

BY  /s/ David L. Belt

David A. Slossberg (ct13116)
David L. Belt (ct04274)
Jeffrey P. Nichols (ct29547)
HURWITZ SAGARIN SLOSSBERG
 & KNUFF LLC
147 North Broad Street
P.O. Box 112
Milford, Connecticut 06460
Tel:    (203) 877-8000
Fax:    (203) 878-9800
Email: DBelt@hssklaw.com
          DSlossberg@hssklaw.com
          JNichols@hskklaw.com

Its Attorneys


OF COUNSEL

Mark Rifkin (pro hac vice)
Ben Kaufman (pro hac vice)
Lydia Keaney Reynolds (pro hac vice)
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY  10016

Tel: (212) 545-4600
Fax: (212) 957-4514

Larry R. Veselka (pro hac vice)
Tyler G. Doyle (pro hac vice)
Hector R. Chavez (pro hac vice)
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Tel: (713) 221-2356
Fax: (713)221-2320