UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| F5 CAPITAL,<br><br>Plaintiff,<br><br>v.<br><br>RBS SECURITIES INC. and THE DEPOSITORY TRUST COMPANY,<br><br>Defendants. | CIVIL ACTION NO.<br>3:14-cv-01469-VLB<br><br><br><br>March 13, 2015 |

**REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S COMPLAINT UNDER
<u>THE DOCTRINE OF FORUM NON CONVENIENS</u>**

This case is really a contract dispute between plaintiff F5 Capital ("F5") and non-party The Royal Bank of Scotland plc. ("RBS"). At bottom, F5 alleges breach of a Settlement Agreement it signed with RBS in 2012 to resolve a UK lawsuit. That Settlement Agreement entitled F5 to the return of certain shares in a company called Star Bulk Carriers ("the Shares"). The Settlement Agreement has a forum selection clause obligating F5 to bring suit for all "disputes [] which may arise out of or in any way relate to this Agreement" in England. RBSSI Br., Berry Decl., Ex. A, ¶ 13.2.

The core of F5's Complaint is that RBS did not return the Shares until October 2014 in breach of the Settlement Agreement. But rather than sue RBS in England, F5 has sued RBS Securities Inc. ("RBSSI")—one of RBS's indirect subsidiaries that held the Shares on RBS's behalf—seeking an accounting, as well as interest and dividend payments accrued in the time period before RBS

1

returned the Shares to F5. Plaintiff's supposed "claims" against RBSSI are nothing more than damages claims for an alleged breach of the Settlement Agreement by RBS. F5's lawsuit against RBSSI can only be explained as an attempted end-run around the forum selection clause. The Court should reject this attempt.

## ARGUMENT

F5 agrees with RBSSI that under the law in the Second Circuit, its Complaint must be dismissed if the forum selection clause in the Settlement Agreement meets the four-part test laid out in Martinez v. Bloomberg LP, 740 F.3d 211, 217 (2d Cir. 2014). See F5 Br. at 5. If the forum selection clause is (1) reasonably communicated; (2) mandatory; and (3) the parties and claims in the action are subject to it, there is a presumption of enforceability. Id. at 217. This presumption can only be overcome if F5 satisfies the "heavy burden" of showing enforcement is "unfair, unjust, or unreasonable." Id. at 219 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 13-14 (1972)).

F5 does not dispute that the first two factors have been met here: the forum selection clause was reasonably communicated and it is mandatory. Its claims are also subject to the forum selection clause, which governs all claims "arising out of and relating to" the Settlement Agreement. Additionally, although it has attempted to avoid the forum selection clause by suing the wrong party—RBSSI instead of RBS—F5 is still bound by the Settlement Agreement, and RBSSI may enforce it. F5 argues at length that it would be inconvenient for it to bring this suit in England. England, however, would not be an inconvenient forum for F5 to sue the only party against whom it actually has a grievance: RBS.

2

At any rate, F5's claims about where it would prefer to bring its suit are irrelevant given the presumptively effective forum selection clause. Such a clause can only be overcome in narrow circumstances, none of which are present here. Indeed, not only are F5's claims about the inconvenience of litigating this case in England irrelevant, they are also wrong—this case would be much more efficiently, conveniently, and fairly litigated in England. Therefore, F5's claim may also be alternatively dismissed under the traditional balancing test for forum non conveniens. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 423 (2007).

A.  **F5 is Subject to the Forum Selection Clause, and RBSSI May Seek to Enforce It.**

"[W]here the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses." Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 722 (2d Cir. 2013) (emphasis added). Although F5 claims that a non-party can only enforce a forum selection clause in certain narrow circumstances (such as when the party and non-party act in concert to commit fraud, or the non-signatory's existence is disclosed in the contract at issue) F5 Br. at 8-9, that is not the law of the Second Circuit. Instead, a non-signatory may enforce a forum selection clause as long as its relationship with the signatory is "sufficiently close" that it is "forseeable" the non-signatory might seek to enforce it. Id. at 723. Here, RBS and RBSSI are "closely related," being a parent corporation and a subsidiary. Further, as F5 admits, RBSSI merely held the shares on RBS's behalf. Compl. ¶ 27 ("RBS

**3**

through its subsidiary Defendant RBSSI still exercises possessory ownership rights over F5's Star Bulk shares."). Additionally, all of F5's allegations concerning RBSSI are "closely related" to the Settlement Agreement.[1]

Midamines SPRL Ltd. v. KBC Bank NV, No. 14-862-CV, 2015 WL 895597 (2d Cir. Mar. 4, 2015) addressed similar facts. In Midamines, the plaintiff sued a bank and its subsidiary. Id., at *1. The plaintiff had signed an agreement with a subsidiary containing a forum selection clause. The Second Circuit found the parent could enforce the forum selection clause because "[they were] closely related entities and plaintiffs' claims against [the parent] arise out of the same transaction." Id.

F5 cites Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1297 (3d Cir. 1996) in support of its argument that non-signatories should not be able to use their relationship with signatories to enforce a forum selection clause. F5 Br. at 9. That aspect of Dayhoff has been rejected by the Second Circuit. Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009) (declining to follow Dayhoff, and holding instead that "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause").

---

[1] F5 argues that under the U.K. Contracts (Rights of Third Parties) Act 1999, RBSSI does not have the right to enforce the Settlement Agreement. F5 Br. at 7-8. It would be manifestly unjust if F5 could invoke that Act to prevent RBSSI from enforcing the Settlement Agreement when F5 has sued the wrong party in order to escape the forum selection clause.

**4**

Courts in this Circuit have also found it is appropriate to enforce a forum selection clause when a plaintiff has named a non-signatory party solely to escape its contractual obligations. See Midamines SPRL Ltd. v. KBC Bank NV, No. 12 CIV. 8089 RJS, 2014 WL 1116875, at *6 (S.D.N.Y. Mar. 18, 2014) (rejecting party's naming of wrong party in an attempt to "avoid the forum-selection clause") aff'd, No. 14-862-CV, 2015 WL 895597 (2d Cir. Mar. 4, 2015).[2]

Here, the conclusion that F5 has named the wrong party is inescapable. F5 admits in its complaint that RBSSI held the Shares on RBS's behalf, Compl. ¶ 27, that RBSSI exercises no claim to the Shares, id. ¶ 18, and F5 does not allege that RBSSI ever claimed a beneficial interest in the Shares. Although F5 tries to

---

[2] See also Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996) (rejecting party's "bald attempt to evade its duty to arbitrate"); Vertucci v. Orvis, No. 05-1307, 2006 WL 1688078, at *5 (D. Conn. May 30, 2006) (rejecting party's attempt to "evade its duty to arbitrate"); Doctor's Assoc., Inc. v. Hollingsworth, 949 F. Supp. 77, 84 (D. Conn. 1996) (disallowing party from "evad[ing] its contractual duty to arbitrate"). F5 attempts to distinguish these cases on the grounds that they involved different facts. F5 Br. at 16-17. These are distinctions without a difference. Each case stands for the proposition that in a wide variety of factual scenarios, court will not allow a party to evade a binding forum selection clause by naming a party not subject to the clause. Although (as F5 points out) parties have tried a number of different creative ways to do this, the principle in each case is the same: courts do not allow a party to escape a forum selection clause by intentionally suing the wrong party.

5

rehabilitate its Complaint in its opposition brief, F5 Br. at 15-16, it has never identified any obligation that RBSSI owes to it other than one derived from RBS's obligations under the Settlement Agreement. F5 alleges it gave the Shares to RBS as collateral. F5 Compl. ¶ 10. F5 and RBS then signed a Settlement Agreement requiring RBS to give the Shares back. Id. ¶ 13. In that Settlement Agreement, F5 recognized RBS controlled the Shares. RBS did not return the Shares for some time (although it has now done so). F5 Br. at 5. F5 wants damages for interest and dividend payments relating to the Shares. Id. Thus, F5's Complaint and brief make clear that its claim is against RBS, not against the intermediary who held the shares on RBS's behalf. This Court should hold F5 to its promise to litigate such a claim in English courts.

B.  F5's Claims "Arise Out Of" and "Relate To" the Settlement Agreement

The Settlement Agreement's forum selection clause is broadly worded, governing all claims "aris[ing] out of" or "relat[ing] to" it.[3] RBSSI Br., Berry Decl., Ex. A ¶ 13.2. "Relating to" is "is not necessarily tied to the concept of a causal connection." Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128 (2d Cir. 2001). "Relating to" means "connected by reason of an established or discoverable relation," id. (citation omitted), or that the "the origin of the dispute is related to that agreement," John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1074 (3d Cir. 1997) (cited approvingly in Phillips, 494 F.3d at 389). English law is in accord that a forum selection clause like the one at issue here

---

[3] **F5 focuses on the term "arising out of," F5 Br. at 13, instead of "relating to," which is significantly broader, Phillips, 494 F.3d at 389.**

should be liberally construed to cover a wide variety of claims, including tort claims.[4] See RBSSI Br. at 13-14.

F5's claims are related to the Settlement Agreement. Once again, F5 claims that it gave the Shares to RBS. Once the Settlement Agreement was signed, RBS was allegedly required to give the Shares back. RBS allegedly did not give the Shares back until October 2014. During that time period, because RBS did not return the Shares, F5 alleges it incurred various damages, including loss of cash dividends paid on the Shares, F5 Br. at 3, and loss of interest on the Shares, id. at 5. Each of these claims has a connection to the Settlement Agreement because that Agreement is the origin of RBS' various obligations with respect to the Shares. The claims are therefore "related to" the Agreement.

F5 also claims that some of the Shares do not relate to the Settlement Agreement because they were purchased with cash dividends in 2013, after the Settlement Agreement was executed. Id. But F5 directed RBS (not RBSSI) to purchase those Shares with cash dividends that were received while RBS allegedly held the Shares in breach of the Settlement Agreement. According to

---

[4] F5 does not discuss these English cases, other than to make a conclusory assertion they "have no bearing on this action," and to examine the factual distinctions between this case and those. F5 Br. at 12 n.7. Such factual distinctions are not relevant, because the English case law is clear that it rejects "fine distinctions" in favor of "liberally constr[uing]" forum selection clauses. Martinez, 740 F.3d at 224. Under this rubric, these claims "arise out of" and "relate to" the forum selection clause.

7

F5, it had to direct RBS to purchase Shares with the cash dividends because RBS still held the Shares in alleged breach of the Settlement Agreement. Therefore, all of the Shares still relate to the Settlement Agreement.

C. It Would Not be Unreasonable or Unjust for F5 to Litigate this Case in England.

If (as is the case here), the first three factors of the test for enforcing a forum selection clause are met, it is presumptively enforceable. Martinez, 740 F.3d at 217. To overcome the forum selection clause, F5 must make a "strong showing" that enforcement would be "unreasonable or unjust." Id. To do so, F5 must show "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." Id. at 228 (punctuation and citation omitted).

F5 has made no such showing. See F5 Br. at 18-19. Rather, it argues that it would be "inconvenient" for it to litigate its case in England because it would be difficult for it to get discovery there.[5] Id. Other than claiming that it would not be able to obtain discovery from RBSSI or third party DTC if it litigated this case in

---

[5] Frederiksson v. HR Textron, Inc., 484 F. App'x 610, 612 (2d Cir. 2012), which F5 cites in support of its argument that this Court should not apply a binding forum selection clause, F5 Br. at 18, does not address the four-part test for enforcing such a clause.

8

England,[6] F5 provides no reason to overcome the "strong federal public policy supporting the enforcement of forum selection clauses." Martinez, 740 F.3d at 219.[7] This Court should enforce the Settlement Agreement.

D. **Alternatively, F5's Claims May Be Dismissed Under the Forum Non Conveniens Balancing Test.**

In addition to dismissing the Complaint under the forum selection clause, this Court may also dismiss it under the traditional forum non conveniens balancing test. RBSSI argued in its opening brief at length that this test points in favor of dismissal, an argument to which F5 has not responded. RBSSI Br. at 18-21.

A three-step analysis applies when determining whether this case should be dismissed under the forum non conveniens balancing test. Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) states:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a

---

[6] F5 assumes that it is impossible for parties to obtain discovery in foreign jurisdictions. F5 Br. at 18-19. The burden under this factor is on F5. It is not enough for F5 to simply allege that it cannot obtain discovery from RBSSI or DTC in England. To prevail, it must provide some kind of proof that is the case, which it has not done.

[7] To the extent that F5 argues here that RBSSI is not subject to jurisdiction in England, it has not provided this Court with any proof. Further, as discussed infra, F5 still has a full remedy against RBS in England to proceed with its claims.

court balances the private and public interests implicated in the choice of forum.

Id. Here, as a foreign plaintiff suing in a U.S. forum, F5 is entitled to little deference. Id. at 154. It should be afforded even less deference because its choice of forum is motivated by its desire to do an end-run around its binding agreement with RBS. Forum-shopping plaintiffs are not entitled to deference in their choice of forum. Id. Although F5 claims that it would not be able to sue RBSSI in England, once again, its case is really against RBS for its alleged breach of the Settlement Agreement, and damages flowing from that breach. RBS, of course, is perfectly amenable to suit in England, having irrevocably consented to jurisdiction there. See RBSSI Br., Ex. A., ¶ 13.2. To the extent that RBSSI truly will not be amenable to suit in England, this is irrelevant because "the lawsuit could proceed against the necessary defendants." Chirag v. MT Marida Marguerite Schiffahrts, 983 F. Supp. 2d 188, 196 (D. Conn. 2013). F5 has a forum to sue the only party against which is has a real grievance. That forum is England, and the party is RBS.

## CONCLUSION

For the reasons discussed above, and in its opening brief, RBSSI requests that this Court dismiss F5's Complaint under the doctrine of forum non conveniens.

Dated: March 13, 2015

                        RBS SECURITIES INC.

                        /s/ Robert Hoff
                        Robert S. Hoff (ct27084)

**Wiggin and Dana LLP**

**Two Stamford Plaza**
**281 Tresser Boulevard**
**Stamford, CT 06901**
**Tel: (203) 363-7600**
**Fax: (203) 363-7676**
**rhoff@wiggin.com**

**Timothy A. Diemand (ct18075)**
**Wiggin and Dana LLP**
**20 Church Street**
**Hartford, CT 06103**
**Telephone: (860) 297-3700**
**Facsimile: (860) 525-9380**
**tdiemand@wiggin.com**

**Ivana D. Greco (ct29635)**
**Wiggin and Dana LLP**
**One Century Tower**
**PO Box 1832**
**New Haven CT 06508**
**Tel: (203) 498-4400**
**Fax: (203) 782-2889**
**igreco@wiggin.com**

## CERTIFICATION OF SERVICE

This is to certify that the foregoing brief was filed electronically this 13th day of March, 2015. A copy of this brief will be made available to all counsel of record through the CM/ECF system.

By: /s/ Robert Hoff