UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| F5 CAPITAL<br><br>                Plaintiff,<br><br>vs.<br><br>RBS SECURITIES INC., THE<br>DEPOSITORY TRUST COMPANY<br><br>                Defendants. | Case No. 3:14-cv -1469-VLB<br><br><br><br><br><br><br>April 6, 2015 |

PLAINTIFF'S SUR-REPLY IN OPPOSITION TO
DEFENDANT RBS SECURITIES INC.'S MOTION TO DISMISS
UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

Defendant RBS Securities, Inc.'s ("RBSSI" or "Defendant") motion to dismiss the Complaint on the grounds of *forum non conveniens* must be denied because (a) the Settlement Agreement between The Royal Bank of Scotland, plc ("RBS") and F5, which serves as the basis for RBSSI's *forum non conveniens* argument explicitly provides that it cannot be enforced by non-parties, such as RBSSI;  (b) this action between F5 and RBSSI is not covered by or related to the action which was resolved by the Settlement Agreement; and (c) it would be manifestly unjust to force F5 to litigate this action against RBSSI, *a Connecticut-based corporation*, regarding shares held by RBSSI *in Connecticut*, in a foreign court an ocean away rather than right here in Connecticut.

I.    THE FORUM SELECTION CLAUSE CANNOT BE ENFORCED BY RBSSI
      UNDER THE TERMS OF THE SETTLEMENT AGREMEENT

RBSSI's principal argument is that Plaintiff has purportedly agreed to

litigate this claim only in the courts of England.  As in its opening brief, in its reply brief RBSSI continues to ignore the fact – highlighted in F5's Response Memorandum – that RBSSI is expressly and explicitly _barred_ from enforcing the forum selection clause in the Settlement Agreement. The Settlement Agreement, which forms the basis of RBSSI's _forum non conveniens_ argument clearly, plainly, and conspicuously states: "No person _other than the Parties_ [thereto] may enforce any rights arising out of or under this Agreement by virtue of the Contracts (Right of Third Parties) Act 1999." Settlement Agreement, ¶ 10 (emphasis added).  On this point, at least, the Settlement Agreement could not be any clearer: as a non-party to the Settlement Agreement, RBSSI has no right to enforce it.  Hoping to distract the Court from the clear, plain, and conspicuous limitation in the Settlement Agreement, RBSSI relegates this crucial fact to a mere footnote in its reply brief.

RBSSI also mischaracterizes F5's argument and the text of the Settlement Agreement, stating, "F5 argues that under the U.K. Contracts (Rights of Third Parties) Act 1999, RBSSI does not have the right to enforce the Settlement Agreement."  Reply at 4, n.1.  This argument is blatantly false.  F5 has not argued, and _does not_ need to argue, that the Act prohibits RBSSI, as a non-signatory, from enforcing the forum selection clause.  Rather, F5's argument is based on the clear, plain, and express language of the Settlement Agreement itself, which expressly and explicitly prohibits RBSSI (a non-party to that agreement) from asserting any rights under it.  Opposition Brief at 7-8.  Indeed, as F5 notes in its Opposition Brief, the Act permits _certain_ third-parties to enforce contracts, but

2

the express language of the Settlement Agreement itself plainly states that the Act does not apply to the Settlement Agreement.

To be completely clear, the Court need not construe the U.K. Contracts (Rights of Third Parties) Act 1999 to resolve this motion.  RBSSI has not cited any authority (under the Act or otherwise) prohibiting this Court from enforcing the Settlement Agreement exactly as it was written. All the Court need do is apply the Settlement Agreement precisely as it was written by the parties to the agreement (*i.e.*, by parties other than RBSSI), and hold that RBSSI – as a non-party to the Settlement Agreement – has no right to enforce it against F5.[1]  RBSSI's reply brief provides no relevant legal argument (under United States or English law) why the Court should not apply the Settlement Agreement exactly as written and deny RBSSI – a non-party to that agreement – a right to enforce it when the parties to the agreement expressly agreed it would have none.

For example, in *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009) (emphasis added), cited by RBSSI, the Second Circuit held that the mere "fact a party is a non-signatory to an agreement is insufficient, *standing alone*, to preclude enforcement of a forum selection clause."  But the fact that RBSSI is not a signatory to the Settlement Agreement does not "stand alone"

---

[1] If The Royal Bank of Scotland plc were a party to this action, the Court may need to consider whether the forum selection clause is enforceable.  However, since RBSSI – the only defendant joined in the litigation at this time – is not a party to the Settlement Agreement, the Court need not undertake that analysis at this time.

3

here.  The Settlement Agreement itself provides that non-signatories (such as RBSSI) have no right to enforce the agreement.  In addition, the shares in question were held, not by RBS, but instead by Defendant RBSSI, a Connecticut company, in Connecticut.  These additional facts preclude enforcing the forum selection clause in this case.

RBSSI's fanciful argument that F5 has sued it to circumvent the forum selection clause in the Settlement Agreement could not be farther from the truth. In fact, F5 sued RBSSI because *RBSSI* converted the shares from registered form to street name in 2009 and *RBSSI* held the shares in its account at DTC when the action was commenced, and F5 continues to press its claim against RBSSI because *RBSSI* – not RBS – held the shares continuously since 2009.[2]  If *RBSSI* misused the shares while it held them (as alleged in the Complaint), then *RBSSI* – not RBS – must account to F5 for that misuse.

---

[2] As Plaintiff explained in its response brief, F5 commenced this action to determine whether Defendant RBSSI properly complied with its instructions regarding the Star Bulk shares, to determine what RBSSI has done with the shares, to determine whether RBSSI profited from the shares in any other way, and to obtain a proper accounting for the dividends and interest earned on the shares during the time RBSSI held them.  Over RBSSI's objection, on January 16, 2015, the Court ordered RBSSI to respond to Plaintiff's discovery requests. RBSSI still has <u>not</u> produced the discovery ordered by the Court.

II.   IT WOULD BE UNREASONABLE TO LITIGATE THIS CASE IN ENGLAND

Although discovery has only recently commenced, based upon information already provided by counsel for The Depository Trust Company ("DTC") in response to a subpoena served upon DTC by F5, F5 is confident it will be able to prove that the stock shares in question – which were returned to F5 shortly after this action was commenced – were at all relevant times held by Defendant RBSSI in Connecticut.  *See* Declaration of Mark C. Rifkin in Opposition to Motion to Dismiss, submitted herewith.  Once discovery is complete, Plaintiff expects to prove these facts beyond dispute: (1) the shares were held by RBSSI, *a Connecticut-based corporation*; and (2) RBSSI held the shares *in Connecticut*.[3] F5 also expects that the relevant documents and the knowledgeable witnesses are here in Connecticut.

Having no answer to all these Connecticut-based facts, RBSSI's reply brief continues its sleight-of-hand, hoping to confuse the Court by pointing to the Settlement Agreement with RBS.  Throughout the reply brief, beginning on the first page, Defendant RBSSI tries to rewrite the action, not as one against RBSSI, but rather as if it were against RBS (a different company). RBS is *not* a party to this action.  And RBS is *not* RBSSI: they are different corporations.  Whether the Court considers this a convenient forum in which to litigate a claim against *RBS* –

---

[3] These factors are directly relevant to the Court's analysis. *See Frederiksson v. HR Textron, Inc.*, 484 F. App'x 610, 612 (2d Cir. 2012) (court considers availability of witnesses and presence of other evidence in the forum as well as the defendant's amenability to suit in the forum).

when and if such a claim were to be asserted against RBS – no such claim is pending against it at this time.  The Court's view of such a potential (and unfiled) claim against RBS has no bearing on whether Connecticut federal court is a convenient forum in which to litigate the actual (pending) claim against RBSSI.

Moreover, it would be extremely inconvenient to litigate this claim – against a Connecticut corporation, regarding shares it held in Connecticut – in a foreign court an ocean away rather than right here in Connecticut for at least three reasons.  *First*, nearly all the documents are likely to be right here in Connecticut.  *Second*, most of the knowledgeable witnesses are also in Connecticut as well.  In its reply brief, RBSSI does not deny these facts.  *Third*, and most important, as F5 noted in its Response Brief, the English courts have no jurisdiction over RBSSI.

III.    THE *FORUM NON CONVENIENS* BALANCING TEST DOES NOT WARRANT DISMISSAL

Under the *forum non conveniens* balancing test, the Court conducts three inquiries:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).

Here, Plaintiff's choice of forum is the most obvious and reasonable, and should be accorded significant deference, and RBSSI fails to propose an adequate alternative forum.[4]

---

[4] The third balancing factor, which RBSSI does not discuss in its reply brief, is at

Obviously, the first factor weighs heavily in favor of denying RBSSI's motion to dismiss. Plaintiff F5 has chosen to litigate its claims against RBSSI in Connecticut, RBSSI's home forum. As discussed above, RBSSI is a Connecticut defendant. Nearly all the key witnesses and key documents are located in Connecticut. These factors strongly support F5's choice of the District of Connecticut to litigate its claims against RBSSI. RBSSI argues that as a foreign plaintiff suing in the United States, F5's choice of forum is entitled to little deference. Reply Br. at 10 (citing *Norex*, 416 F.3d at 154). That argument misconstrues the holding in *Norex*.

In *Norex*, the Second Circuit explained why a foreign plaintiff's choice of venue might not be entitled to much deference: "when a foreign plaintiff chooses a U.S. forum, it 'is much less reasonable' to presume that the choice was made for convenience." *Norex*, 416 F.3d at 154 (internal citations omitted). The Second Circuit explained that these reasons do not always apply: "These presumptions, however, may not apply, either at all or with full force, to forum choices in particular cases." *Id.* Thus, the Second Circuit held that a court must consider "the totality of circumstances supporting a plaintiff's choice of forum." *Id.* When, as here, a plaintiff chooses the defendant's home forum "to obtain jurisdiction over defendant . . . substantial deference would still be generally appropriate." *Id.* at 155-56. (internal citations omitted).

---

best neutral on whether this case belongs in Connecticut. Thus, it should not influence the Court's determination of this motion.

The circumstances supporting the plaintiff's choice of suing in New York in *Norex* included (i) the risk that the plaintiff might not be able to obtain jurisdiction over all the defendants in any foreign court; (ii) whether witnesses and evidence might be more readily available in New York; and (iii) the availability of highly qualified counsel to represent the parties in New York. *Norex*, 416 F.3d at 160 (reversing district court's *forum non conveniens* balancing analysis). Those same factors are present here, and they all support F5's decision to sue RBSSI in Connecticut. *First*, RBSSI is not subject to jurisdiction in England. *Second*, the witnesses and evidence are located here in Connecticut. And *third*, the parties had no difficulty retaining highly competent counsel to represent them here in Connecticut.

For much the same reason, the second balancing factor also weighs heavily in favor of denying RBSSI's motion to dismiss. The forum RBSSI proposes is inadequate because the English courts have no jurisdiction over RBSSI. RBSSI does not deny this in its reply brief. But even if English courts could exercise jurisdiction over RBSSI, it would be highly inefficient (and therefore inadequate) to litigate a case in England where nearly all the witnesses and documents are located an ocean away, right here in Connecticut. Further, while RBSSI argues that F5 "has not provided this Court with any proof" that RBSSI is not subject to jurisdiction in England (Reply Br. at 9 n.7), that argument ignores clear Second Circuit precedent requiring the <u>movant</u> (*i.e.,* RBSSI) to demonstrate the availability of an adequate alternative forum. *Norex*, 416 F.3d at 157 (citing *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir. 2002), and *Iragorri v.*

*United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (*en banc*)).  RBSSI has done

nothing to establish that it is subject to jurisdiction in England.

III.   **THE CLAIMS AND PARTIES IN THIS ACTION ARE NOT SUBJECT TO**
       **THE FORUM SELECTION CLAUSE IN THE AGREEMENT WITH RBS**

       In its reply brief, RBSSI argues that Plaintiff F5 has ignored whether its

claims "relate to" the Settlement Agreement.  That is not correct.  As F5 explained

in its Response Memorandum, even if the Court were to conclude that RBSSI has

non-party rights under the Settlement Agreement, it also "must 'examine the

substance of the claims, shorn of their label' and compare how they relate to the

language of the given forum-selection clause" before it can enforce the choice of

venue clause against F5 in this case.  *Kasper Global Collection & Brokers, Inc. v.*

*Global Cabinets & Furniture Mfrs., Inc.*, 952 F. Supp. 2d 542, 561-62 (S.D.N.Y.

2013) (quoting *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 388 (2d Cir. 2007)).

       There is no dispute that the term "arising out of" requires that the claim

must at least "originate from a specified source." *Phillips*, 494 F.3d at 389 (citing

Webster's Third New International Dictionary 117 (1981)).  It does not

"encompass[] all claims that have some possible relationship with the contract."

The somewhat broader phrase "relate to" likewise requires at least some

connection between the contract at issue and the claims asserted by the plaintiff.

*Id.*; *see also Kasper*, 952 F. Supp. 2d at 561-62.

       As F5 explained in its Response Brief, the Settlement Agreement resolved a

lawsuit brought by TMT and other entities controlled by Mr. Su against RBS,

arising out of RBS's handling of TMT's Account – the lawsuit had nothing to do

with the claims asserted by Plaintiff in this action.  Compl. ¶ 13.   The Settlement

Agreement merely provided that, in exchange for a certain sum of money, RBS would release to F5 the Star Bulk shares that it held on FS's behalf. The Settlement Agreement did not address: (a) RBS's transfer of the shares to RBSSI; (b) how RBSSI was to handle the shares; (c) how RBSSI was to distribute dividends paid on the shares; (d) how RBSSI was to calculate and distribute any interest earned on the shares; or (e) how RBSSI was to account for the shares to Plaintiff. These issues are the subject of this litigation, and they are not addressed by the Settlement Agreement.

Even more importantly, after accounting for the 15:1 reverse stock split, the Settlement Agreement covered only 200,000 Star Bulk shares transferred to RBS by F5 in February 2008. More than five years later, in a separate transaction, in June of 2013, F5 instructed RBS to acquire 213,599 additional Star Bulk shares on its behalf. The Settlement Agreement did not provide that RBS would have any right to shares subsequently purchased by F5, even if purchased with the proceeds of dividends paid on the original shares transferred. The additional 213,599 shares, which constituted more than half of the Star Bulk shares held by RBSSI, were never subject to the Settlement Agreement, which had been executed more than a year before those new shares were even acquired.  Thus, there is no way that any claim arising out of those shares could possibly "arise out of" or "relate to" the Settlement Agreement.

For all the foregoing additional reasons, the Court should deny Defendant RBSSI's motion to dismiss under the doctrine of *forum non conveniens*.

Dated:  April 6, 2015                          **Respectfully submitted,**

**HURWITZ SAGARIN SLOSSBERG
& KNUFF LLC**

By:    **/s/ David A. Slossberg**
        **David A. Slossberg (ct13116)**
        **David L. Belt (ct04274)**
        **Jeffrey P. Nichols (ct29547)**
        **147 North Broad Street**
        **P.O. Box 112**
        **Milford, CT  06460**
        **Tel:  (203) 877-8000**
        **Fax:  (203) 878-9800**
        **Email: DBelt@hssklaw.com**
              **DSlossberg@hssklaw.com**
              **JNichols@hskklaw.com**

        **Mark Rifkin (pro hac vice)**
        **Benjamin Y. Kaufman (pro hac vice)**
        **Lydia Keaney Reynolds (pro hac
        vice)**
        **WOLF HALDENSTEIN ADLER
        FREEMAN & HERZ LLP**
        **270 Madison Avenue**
        **New York, NY  10016**
        **Tel: (212) 545-4600**
        **Fax: (212) 957-4514**

        ***Attorneys for Plaintiff F5 Capital***

/778564

## CERTIFICATE OF SERVICE

This is to certify that on April 6, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to all parties that are unable to accept electronic filing.  Parties may access this filing through the Court's electronic system.

/s/ David A. Slossberg
David A. Slossberg

12